COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-255-CV

 

 

CITY OF ARGYLE, TEXAS                                                     APPELLANT

 

                                                   V.

 

DAVID PIERCE, AN
INDIVIDUAL, AND                                      APPELLEES

CLEAR CHANNEL OUTDOOR,
INC.

                                                                                                        

                                              ------------

 

             FROM THE 16TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. 
Introduction








This is the case of AWhere=s the
sign?@  In four issues, Appellant City of Argyle (Athe City@)
appeals the denial of its plea to the jurisdiction and asserts that (1) David
Pierce (APierce@) and
Clear Channel Outdoor, Inc. (AClear
Channel@)
(collectively, Athe Signers@) have
no standing to bring constitutional property claims because they have no vested
property rights; (2) if Pierce and Clear Channel had standing, their inverse
condemnation claim is invalid and would not defeat sovereign immunity; (3) a
civil court lacks jurisdiction over claims in equity that challenge a penal
ordinance; and (4) the City cannot be estopped from enforcing its sign
ordinance.  Because we hold that the City
has successfully challenged the trial court=s
jurisdiction over some, but not all, of the Signers= claims,
we reverse and render in part and affirm in part.

II. 
Factual and Procedural Background

Pierce and Clear Channel erected an off-premises
outdoor advertising sign and sued the City when the City attempted to enforce
its sign ordinance preventing such signs from being erected in the City=s
extra-territorial jurisdiction (AETJ@)
against Pierce and Clear Channel.

A. 
Ordinance Prohibits Signs in the ETJ

On August 24, 1993, the City adopted a ASign
Regulations@ ordinance (Athe
Ordinance@), known as AArticle
12.400.@  The Ordinance, as amended in 1997, regulated
and applied to signs within the City=s limits
and within its ETJ.  The Ordinance contained
detailed descriptions of the City=s sign
regulations, including a requirement to obtain a permit from the City and a
list of prohibited signs.  The Ordinance
expressly prohibited A[s]igns advertising off-premise
businesses, products or services@ like
the one that is the genesis of this suit and included a $500 penalty clause.








In 2003, the City adopted a very similar
ordinance that raised the fine to a maximum of $2,000 and continued to prohibit
off-premises signs within the City and its ETJ. 
As reflected in the city council meeting minutes for June 10, 1997, the
City approved an ETJ Apportionment Agreement between the City and two nearby
municipalities, the City of Northlake and Corral City, and that agreement has
been on public file in the Denton County property records since July 21,
1997.  The ETJ agreement describes a
dotted line that forms the southern and eastern boundaries of the City=s ETJ.

B. 
McCutchin Property

On January 26, 1999, the City annexed
approximately 144 acres of land owned by the Ronald McCutchin Family
Partnership, LTD., and Gene Paul McCutchin into its ETJ (AMcCutchin
Property@).  The McCutchin Property mostly surrounded the
property at issue in this case.  The City
annexed the McCutchin Property by adopting Ordinance 99-01.

The City requested that David Gattis, the City=s
cartographer, draw a map concerning the City=s
boundaries and ETJ.  The map in part
designated the City=s ETJ by labeling such property AExtraterritorial
Jurisdiction.@ 
The map did not, however, designate the sign property as AExtraterritorial
Jurisdiction.@ 
Labeled AAbstracts,@ the
Gattis map was displayed in the City offices.

 

 








C. Pierce

In 2000, prior to executing a Lease with Clear
Channel, Pierce sought to have his property rezoned.  According to Pierce, the City Secretary,
Debbie Milligan, responded that whether he could accomplish rezoning was not an
issue for the City but for Denton County because the sign property was not
located within the City=s ETJ and that he could
therefore do whatever he wanted to do with the property.  To support this statement, Milligan referred
Pierce to the Gattis map that designated the sign property as not within the
City=s
ETJ.  Before the sign was constructed,
Pierce did not tell Clear Channel about his conversation with Milligan, his
interpretation of the Gattis map, or other information regarding whether the
sign location was within the City=s
ETJ.  No one from Clear Channel ever
asked Pierce whether the sign location on the Pierce property was in the City=s ETJ.

D.  Clear
Channel, TxDOT, and the City








Prior to entering into the lease with Pierce, and
prior to applying for a permit, Clear Channel looked into whether the sign
property was located within the City=s
ETJ.  Clear Channel began working with
Texas Department of Transportation (ATxDOT@) in
March 2002 to determine the location of the property and whether an outdoor
advertising sign could be erected on the property.  Clear Channel was seeking to obtain a
rural-road sign permit.  The property was
located on a rural road, and Texas law required Clear Channel to obtain a
permit from TxDOT to operate its sign unless the property was located in the
ETJ of a municipality.  

According to Judy Jamison, Clear Channel=s
Assistant Real Estate Manager,[1]
whenever Clear Channel applied to TxDOT for a sign permit, it included maps of
the location of the sign so that TxDOT knew where to go to inspect the sign
location.  One map that Clear Channel
submitted to TxDOT showed the sign in question as a ACentermount
monopole,@ with the center pole of the
sign twenty-seven feet south of the southern edge of F.M. 407 and about .8
miles east of Interstate Highway 35.  








Jamison went to the City=s
offices in late 2001 or early 2002 to find out if the sign property was in the
City=s
ETJ.  The City referred Jamison to the
Gattis map, hanging on the wall of the City=s permit
clerk=s
office, which did not show the property to be in the City=s
ETJ.  The Gattis map indicated that the
sign property was separate from the City, located in an Aisland@
surrounded by the City.  According to
Jamison, the city secretary, Codi Delcambre, told her that the property had
possibly been disannexed by the City some time ago because the City and the
former owner of the property Ahad a
falling out.@ 
The sign location was south of and adjacent to F.M. 407 (a two-lane
rural road) in Denton County and was adjacent to the City=s
corporate boundary running along the north edge of that road.  In other words, the sign was across the
street from the City=s incorporated limits, and it
was less than fifty feet from the City=s
corporate boundary.  Jamison=s visit
to the City provided the information that Clear Channel relied on to conclude
that the sign location was not in the City=s
ETJ.  

Jamison also went to City Hall on September 23,
2003, after the City discovered that the sign had been built and had promptly Ared
tagged@ the
sign before construction could be finalized. 
During the second visit to the City, Jamison was accompanied by another
Clear Channel employee, Teresa Moore. 
Jamison and Moore spoke with Bill Palmer, the City=s Code
Enforcement Officer, who asserted that the sign was in the City=s
ETJ.  That same day, Jamison and Moore
spoke with Delcambre, who also asserted that the property was in the City=s
ETJ.  Clear Channel investigated the
Denton County Appraisal Records with regard to the property; the records
indicated that the property was not taxed by the City.








Before Clear Channel built the sign, it was aware
that off-premises signs were prohibited within the City=s
ETJ.  Jamison had reviewed the City=s sign
ordinance before the sign was built, and it was clear to her that the ordinance
prohibited the type of sign at issue within the City=s
ETJ.  Because of that fact, Clear Channel
specifically intended to find a potential sign location in an area outside the
City=s
ETJ.  A year and two months before
initiating the permitting process for the sign in question, Arnold Velez
(President of the Dallas Division of Clear Channel) received written
notification from TxDOT stating that the City did not allow certain signs in
its ETJ.  Velez stated that it was likely
that he would have forwarded that letter to the Clear Channel real estate
department.

E.  The
Lease

Clear Channel routinely solicited lease
agreements to place outdoor advertising signs on private property, and it
solicited and obtained such a lease from Pierce.  On March 29, 2002, Pierce and Clear Channel
executed a lease allowing Clear Channel to erect an outdoor advertising sign on
Pierce=s
property, which is located in an unincorporated region of Denton County.  The lease contained a provision that allowed
Clear Channel to terminate the agreement if it was Aunable
to obtain or maintain any necessary permit for the erection, use and/or
maintenance@ of a sign or if its sign=s use
was Aprevented
or restricted by law.@ 
Clear Channel obtained the permit from TxDOT to own and operate a sign
on the property, as previously recounted. 
But after Clear Channel began constructing the sign, the City stopped
Clear Channel, asserting that the property was in its ETJ and, therefore, was
prohibited by the Ordinance.

 








F. 
Procedural History

On November 24, 2003, the City=s
municipal court issued complaints against Pierce and Velez for erecting an
illegal off-premises sign.  The following
day, summonses were issued commanding Pierce and Velez to appear in municipal
court on December 15, 2003, and answer the complaints.

The SignersCPierce
and Clear ChannelCfiled this lawsuit in state
court, seeking a declaratory judgment with regard to the property=s
location and was that the property in question had been subject to inverse
condemnation, that the plaintiffs had been deprived of their property
interests, and that the penalties accessed by the City were tolled during the
Signers=
constitutional challenges.  On the City=s motion,
the case was removed to federal court. 
The federal court subsequently denied the City=s motion
for summary judgment, specifically ruling that the location of the property
relative to the City=s ETJ was a question under Texas
law, and remanded the majority of the case to state court.[2]  

On May 25, 2007, the City filed its plea to the
jurisdiction to challenge the subject matter jurisdiction of the trial court,
alleging, 








Plaintiffs are
challenging a penal ordinance and are not in danger of any constitutional
deprivations to vested property rights. 
Plaintiffs= pleading affirmatively
negates their inverse condemnation claim. 
Argyle=s sign ordinance is not
arbitrary or capricious.  Enforcement of
the sign ordinance is a governmental function and Argyle is not subject to
being estopped from enforcing the sign ordinance.  Therefore, Argyle is immune from suit, this
Court is without jurisdiction in this matter and Plaintiffs= suit should be
dismissed. 

 

On June 29, 2007, the trial court denied the City=s plea
to the jurisdiction without specifying the reason therefor.  This appeal followed. 

III. 
Standard of ReviewCPlea to
the Jurisdiction

We review the denial of a plea to the
jurisdiction under a de novo standard.  See
Tex. Dep=t of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 226 (Tex. 2004). 
A plea to the jurisdiction is a dilatory plea; its purpose is Ato
defeat a cause of action without regard to whether the claims asserted have
merit.@  Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 554 (Tex. 2000).  The purpose
of a dilatory plea is not to force the plaintiffs to preview their case on the
merits but to establish a reason why the merits of the plaintiffs= claims
should never be reached.  Id.  Although the claims may form the context in
which a plea to the jurisdiction is raised, the plea should be decided without
delving into the merits of the case.  Id.
 








Accordingly, in determining whether jurisdiction
exists, we construe the pleadings liberally in favor of the plaintiffs and look
to the pleaders= intent.  See Miranda, 133 S.W.3d at 226.  We may also consider evidence presented to
the trial court relevant to jurisdiction when it is necessary to resolve the
jurisdictional dispute.  See Bland,
34 S.W.3d at 554B55.  If the pleadings affirmatively negate the
existence of jurisdiction, then a plea to the jurisdiction may be granted
without allowing the plaintiff an opportunity to amend.  County of Cameron v. Brown, 80 S.W.3d
549, 555 (Tex. 2002).

IV. 
Declaratory Judgment

In their live petition at the time of the trial
court=s ruling
on the City=s plea to the jurisdiction, the
Signers first asserted a cause of action under the Declaratory Judgments
Act.  The Act provides,

A person interested under a . . . written
contract, or other writings constituting a contract or whose rights, status, or
other legal relations are affected by a statute, municipal ordinance . . . may
have determined any question of construction or validity arising under the . .
. ordinance . . . and obtain a declaration of rights, status, or other legal
relations thereunder.

Tex. Civ. Prac. & Rem. Code Ann. '
37.004(a) (Vernon Supp. 2007). 
Specifically, the Signers sought a declaratory judgment that (1) the
sign property is not within the City=s ETJ;
(2) the City is estopped from asserting that the sign property is within its
ETJ; (3) the City=s authority to regulate in its
ETJ has been revoked; and (4) the City has disannexed the sign property.[3]  The City=s third
and fourth issues challenge the trial court=s
jurisdiction over these declaratory judgment claims.








A.     The
Trial Court=s Jurisdiction Over a
Case Involving a Penal Ordinance

 

In its third issue, citing State v. Morales,
869 S.W.2d 941, 945 (Tex. 1994), the City argues that the trial court may not
hear these declaratory judgment claims because the Ordinance is a penal ordinance,
over which a civil court has no jurisdiction.[4]  The Texas Supreme Court in State v.
Morales held that, with exceptions, a civil court does not have
jurisdiction to render a declaratory judgment regarding the constitutionality
of a penal statute.  Id. at
947.  The court explained, 

In this state=s bifurcated system of civil
and criminal jurisdiction, a civil court has jurisdiction to declare
constitutionally invalid and enjoin the enforcement of a criminal statute only
when (1) there is evidence that the statute at issue is unconstitutionally
applied by a rule, policy, or other noncriminal means subject to a civil court=s equity powers and
irreparable injury to property or personal rights is threatened, or (2) the
enforcement of an unconstitutional statute threatens irreparable injury to
property rights.  A naked declaration as
to the constitutionality of a criminal statute alone, without a valid request
for injunctive relief, is clearly not within the jurisdiction of a Texas court
sitting in equity.  

 








Id. at 942. 
The City argues that the Signers cannot challenge the Ordinance in a
civil suit because they cannot meet the Morales exceptions and because
they have an adequate remedy at law: challenging the penal provision as part of
their defense to a criminal prosecution. 
Because this argument mischaracterizes the Signers=
requested declaratory relief, we disagree. 

The Signers do not challenge the
constitutionality or the enforceability of the Ordinance; rather, their lawsuit
seeks a declaration that their conduct did not constitute a violation of that
Ordinance.  This request necessarily
assumes the validity of the Ordinance because it asks the court to apply the
Ordinance=s provisions to the facts of
this case and to conclude that the Ordinance does not proscribe the Signers=
erection of their sign.  Accordingly, we
hold that State v. Morales does not affect the trial court=s
jurisdiction in this case, and we overrule the City=s third
issue.[5]

B.     The
Trial Court=s Jurisdiction Over the
Signers= Allegedly Meritless
Claim of Estoppel

 








Next, the City argues in its fourth issue that it
is not estopped from enforcing the Ordinance because estoppel cannot be invoked
against a municipality that is engaged in its governmental or public
functions.  Citing Bexar Metropolitan
Water District v. Education & Economic Development Joint Venture, 220
S.W.3d 25, 32 (Tex. App.CSan Antonio 2006, pet. filed),
the City asserts that if equitable estoppel does not apply in a case against a
governmental unit, there is no waiver of immunity from suit.  

In Bexar Metropolitan Water District, a
joint venture sued Bexar Met for specific performance of a contract to sell
real estate after Bexar Met had refused to close.  Id. at 27.  The joint venture argued that principles of
justice, honesty, and fair dealing should estop Bexar Met from asserting its
immunity from suit.  Id. at
32.  The court held that, because the
joint venture had failed to show that application of equitable estoppel would
not interfere with the exercise of Bexar Met=s
governmental functions and that Bexar Met had accepted and retained the
benefits arising from the contract, Bexar Met was not estopped from asserting
its immunity, and it reversed the trial court=s denial
of Bexar Met=s plea to the jurisdiction.  Id. (citing City of Hutchins v.
Prasifka, 450 S.W.2d 829, 836 (Tex. 1970) (discussing lack of interference
with governmental functions); City of Corpus Christi v. Gregg, 155 Tex.
537, 543, 289 S.W.2d 746, 751 (1956) (discussing accepted and retained
benefits)). 








In contrast, here, the City is not arguing that
its plea to the jurisdiction should have been granted because estoppel does not
apply to its assertion of governmental immunity.  Rather, the City is attempting to argue that
the trial court lacks jurisdiction because estoppel cannot be invoked to bar
its assertion that the sign property is within its ETJ.  In essence, the City is arguing that the
trial court does not have jurisdiction because the Signers= cause
of action is without merit.  However, the
City has not shown that this is a proper manner in which to challenge the trial
court=s
jurisdiction. 

In our review of a trial court=s ruling
on a plea to the jurisdiction, we do not delve into the merits of a case or
decide whether the plaintiff would lose on its claims; rather, we merely decide
whether the trial court has the power to reach the merits of those claims.  Bland Indep. Sch. Dist., 34 S.W.3d at
554.  Even if the law ultimately would
not permit the City to be estopped from asserting that the sign property is
within its ETJ, the City has cited no authority for the proposition that the
ultimate outcome on the Signers=
declaratory judgment claims has any bearing on the existence of the trial court=s
jurisdiction to hear the declaratory judgment causes of action.  Accordingly, we overrule the City=s fourth
issue.

V.  Inverse
Condemnation








In the alternative to their declaratory judgment
causes of action, the Signers pleaded a claim for inverse condemnation under
Article I, Section 17 of the Texas constitution.[6]  As the Signers explain, in the event that the
trial court ruled that the sign property is in the City=s ETJ
and that the Ordinance is constitutional, then they would assert this
alternative cause of action.  In its
second issue, the City argues that the trial court erred by denying its plea to
the jurisdiction as to the Signers= inverse
condemnation claim because the Signers cannot show that the City=s
sovereign immunity has been waived.

A.     Waiver of Immunity for Inverse Condemnation
Claims








Governmental immunity affords a city protection
from suit when the city engages in the exercise of governmental functions
unless that immunity is clearly waived.  City
of Dallas v. Jennings, 142 S.W.3d 310, 315 (Tex. 2004); Harris County v.
Sykes, 136 S.W.3d 635, 638 (Tex. 2004). 
Article I, section 17 of the Texas constitution waives governmental
immunity for valid inverse condemnation claims. 
See Gen. Servs. Comm=n v.
Little‑Tex Insulation Co., 39 S.W.3d 591, 598 (Tex.
2001).  Inverse condemnation occurs when
property is Ataken@ for
public use without proper condemnation proceedings and the property owner
attempts to recover compensation for that taking.  City of Abilene v. Burk Royalty Co.,
470 S.W.2d 643, 646 (Tex. 1971).  To
state a cause of action for inverse condemnation under the Texas constitution,
a plaintiff must allege (1) an intentional governmental act, (2) that resulted
in his property being taken, damaged, or destroyed, (3) for public use.  Little‑Tex, 39 S.W.3d at
598.  

Takings are classified as either physical or
regulatory.  Mayhew v. Town of
Sunnyvale, 964 S.W.2d 922, 933 (Tex. 1998), cert. denied, 526 U.S.
1144 (1999).  The Signers do not argue
that the City has physically taken their property; instead, they allege a
regulatory taking.  A compensable
regulatory taking occurs when a governmental agency imposes restrictions that
either deny a property owner all economically viable use of his property or
unreasonably interfere with the owner=s right
to use and enjoy the property.  Id. at
935; Taub v. City of Deer Park, 882 S.W.2d 824, 826 (Tex. 1994),
cert. denied, 513 U.S. 1112 (1995). 
Whether particular facts are sufficient to allege a constitutional
taking is a question of law.  Little‑Tex,
39 S.W.3d at 598.  When a plaintiff does
not allege a valid inverse condemnation claim, governmental immunity applies,
and the trial court should grant a plea to the jurisdiction.  Bell v. City of Dallas, 146 S.W.3d
819, 825 (Tex. App.CDallas 2004, no pet.).  








B.     The Property Interests Alleged To Have Been
ATaken@

The Signers assert four property interests that
the City has Ataken@: Pierce=s fee
interest in the land and Clear Channel=s
leasehold, sign, and TxDOT sign permit.

1.     TxDOT sign permit

First, we observe that the TxDOT permit is not a
property interest because the Texas Administrative Code unequivocally states: A[I]ssuance
of a permit shall not be deemed to create a property right in the permittee.@  43 Tex.
Admin. Code ' 21.581 (2002).  The Signers, citing Graham v. Richardson,
403 U.S. 365, 374, 91 S. Ct. 1848, 1853 (1971), and Reed v. Village of
Shorewood, 704 F.2d 943 (7th Cir. 1983), contest this statute by asserting
that Aa State=s
characterization of a governmental benefit is not determinative of the
constitutional rights of the benefit holder.@  However, they present no argument nor cite any
authority that the permit is a property interest contrary to the clear wording
of the statute.  We hold that the TxDOT
permit is not a property interest compensable as a result of inverse
condemnation.

2.     The sign








The Signers argue that the sign on the sign
property is a fixture, so it gives rise to a property right for which
compensation is owedwhen taken.  But
whether a billboard is a fixture is a question of fact to be determined from
the mode and sufficiency of annexation, either real or constructive; from the
adaptation of the article to the use or purpose of the realty; and from the
intent of the party who annexed the chattel to the realty.  See Logan v. Mullis, 686 S.W.2d 605,
607 (Tex. 1985); see also Stevenson v. Clausel, 437 S.W.2d 404, 407
(Tex. Civ. App.CHouston [14th Dist.] 1969, no
writ) (AOf the
tests for determining whether or not a chattel has become a fixture, pre‑eminence
is given to the intention to make the thing a permanent accession to the
freehold; the other tests are of value chiefly as evidence of this intention.@).  








In our review of the trial court=s ruling
on the City=s plea to the jurisdiction, we
construe the pleadings liberally in favor of the plaintiffs and look to the
pleaders=
intent.  See Miranda, 133 S.W.3d
at 226.  We take as true all evidence
favorable to the Signers and indulge every reasonable inference and resolve any
doubts in their favor.  See id.
at 228.  But in their petition, the
Signers merely provide the conclusory assertion that A[t]he
City=s
actions . . . constitute an inverse condemnation through the taking, damaging,
or destroying of Pierce and Clear Channel=s
property for public use without just compensation.@  They do not further allege any facts
explaining why the sign in this case is Aproperty@ that
the City has inversely condemned through a Ataking.@  Furthermore, on appeal, the Signers merely
assert generally that Athe Sign is a fixture,@ without
providing any evidence of its permanent nature.[7]


While we are to construe the pleadings and
evidence liberally in favor of the Signers, we cannot create evidence where
none has been presented, and we cannot assume that the billboard is a fixture
in the absence of any evidence showing so. 
Therefore, we hold that the sign is not a property interest compensable
as a result of inverse condemnation.

3.     The fee simple and leasehold interests








Finally, the Signers claim that the City has Ataken@ Pierce=s fee
interest and Clear Channel=s
leasehold interest[8]
in the sign property because the City has denied them the economically viable
use of their property interests and has unreasonably interfered with their
right to enjoy and use their property interests. However, there is no
constitutional property right to use realty in any certain way without
restriction.  City of La Marke v.
Braskey, 216 S.W.3d 861, 863 (Tex. App.CHouston
[1st Dist.] 2007, pet. denied).  In Braskey,
the court noted that 

use of [the appellee=s]
property as a facility for cats is not a constitutionally protected vested
right because it concerns only the way that her property is used, which is not
an absolute right [and that the] asserted harmsCthe
closing of her facility, the death of cats housed at the facility, possible
fines levied against her for operating the facility, her possible confinement
for operating the facility, and her expenditure of attorney=s fees
to pursue continued operation of the facilityCall
concern the use of her property as a facility for cats, which is not a
constitutionally protected vested right.








Id. at 864; see also in Sterling v. San
Antonio Police Dep=t, 94
S.W.3d 790, 794B95 (Tex. App.CSan
Antonio 2002, no pet.) (ASterling has no constitutionally
protected property right to lease gambling devices.@);
Hang On III v. Gregg County, 893 S.W.2d 724, 727 (Tex. App.CTexarkana
1995, writ dism=d by agr.) (A[A]
property owner does not acquire a constitutionally protected right in a
property use merely because it began as a conforming use and is later rendered
nonconforming.@); Smith v. Copeland, 787
S.W.2d 420, 422 (Tex. App.CSan
Antonio 1990, no writ) (holding when considering an injunction preventing the
operation of massage parlors within 1,500 feet of residents, that Aproperty
owners do not acquire a constitutionally protected vested right in property
uses once commenced or in zoning classification once made); Sparten Indus.,
Inc. v. State, 379 S.W.2d 931, 932 (Tex. Civ. App.CEastland
1964, no writ) (holding when considering enforcement of the Sunday Ablue
law,@ that Ait is
evident [that] appellant had no vested property rights entitling them to an
injunction against enforcement of the statute). 

Overall, it must be remembered that, whatever
value and usage the property may be put to, the singular use and benefit being
foreclosed is that of an outdoor sign advertising off-premises material.  Therefore, the entirety of Pierce=s
ability to use the property he owns, and of Clear Channel=s
ability to use the property it leases, is not wholly curtailed; they may use
the property for myriad purposes, but not for the one specific purpose of
erecting the billboard at issue in this case. 
Accordingly, the Signers have not alleged facts sufficient to allege a
constitutional taking of property, so they have also not alleged a valid
inverse condemnation claim.  See
Little‑Tex, 39 S.W.3d at 598.








Citing Harris County v. Progressive National
Bank, 93 S.W.3d 381, 383 (Tex. App.CHouston
[14th Dist.] 2002, pet. denied), the Signers argue that the City=s
challenge to the trial court=s
jurisdiction is an improper attempt to litigate the merits of their inverse
condemnation claim.  In Harris County,
the court held that Harris County=s plea
to the jurisdiction improperly rested upon unresolved factual contentions that
went directly to the merits of the bank=s
suit.  Id. at 383B84.  However, the court went on to examine the
allegations in the bank=s petition, taking them as true
and construing them in the light most favorable to the pleader, and held that
the petition stated a claim for a constitutional taking because it alleged that
(1) Harris County intentionally sold an automobile on which the bank held a
lien without fulfilling its duty to notify the bank, (2) that the sale resulted
in a taking of the bank=s property, and (3) that such
taking was for public use.  Id. at
384.  

Here, we have examined the allegations in the
Signers=
petition, as well as the evidence presented to the trial court, but we reach
the opposite conclusion.  The Signers
have not stated a valid claim for a constitutional taking because (1) the TxDOT
permit and the billboard are not property interests subject to compensation and
(2) the sign ordinance does not deny them all economically viable use of their
property or unreasonably interfere with their right to use and enjoy the
property; therefore, no regulatory taking is alleged.  Accordingly, because the Signers have not
stated a valid inverse condemnation claim, governmental immunity applies, and
the trial court should have granted the City=s plea
to the jurisdiction on the inverse condemnation claim.  See Bell, 146 S.W.3d at 825.  We sustain the City=s second
issue.[9]

 

 








VI. 
Conclusion

Having sustained the City=s second
issue and concluded that governmental immunity applies to the Signers= inverse
condemnation claim, we reverse that part of the trial court=s order
denying the City=s plea to the jurisdiction with
regard to the inverse condemnation and deprivation of property claims and
render judgment dismissing those claims. 
See Tex. R. App. P.
43.2(c).  However, having overruled
the City=s third
and fourth issues challenging the trial court=s
jurisdiction over the Signers=
declaratory judgment causes of action, we affirm that part of the trial court=s order
denying the City=s plea to the jurisdiction with
regard to the Signers= declaratory judgment claims.  See Tex.
R. App. P. 43.2(a).

 

 

BOB
MCCOY

JUSTICE

 

PANEL A:   CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

DELIVERED: May 15, 2008











[1]Jamison was Clear Channel=s only Assistant Real
Estate Manager for the Dallas Division, and no other employee in that division
performed her job functions.  Jamison=s job functions included
determining whether a potential sign location would be in conformance with
state and local regulations.  According
to Jamison, it was her responsibility to determine whether a sign location was
in a municipality=s ETJ.





[2]Currently, the case is
splintered between the federal court and the state trial court where it was
originally filed; the federal court maintained jurisdiction over some of the
constitutional causes of action filed by the Signers. 





[3]The Signers also sought a
declaratory judgment that Velez is not subject to the Ordinance, but the City=s plea to the
jurisdiction did not challenge the trial court=s jurisdiction over that
cause of action.  





[4]The City asserts that its
Ordinance is a penal statute because its violation constitutes a misdemeanor
offense that carries a fine of up to $2,000.





[5]We note that courts have
allowed the Declaratory Judgments Act to be used to address conflicts over
construction of municipal ordinances and boundary disputes.  See, e.g., Super Wash, Inc. v. City
of White Settlement, 131 S.W.3d 249, 256 (Tex. App.CFort Worth 2004) (holding
that appellant could seek declaration of the validity of a municipal ordinance
under the Declaratory Judgments Act because appellant=s rights, status or other
legal relations were affected by the ordinance), rev=d on other grounds, 198 S.W.3d 770 (Tex.
2006); Bexar Metro. Water Dist. v. City of Bulverde, 156 S.W.3d 79, 88B89 (Tex. App.CAustin 2004, pet. denied)
(holding that appellees had the right to have the courts interpret a water district=s enabling act to
determine issues relating to the water district=s boundaries).





[6]The Signers also pleaded
a cause of action for deprivation of property under the Fifth and Fourteenth
Amendments to the United States Constitution. 
The City contends that this claim is merely a restatement of, and is
therefore subsumed by, the inverse condemnation claim.  The Signers do not disagree, and in fact, do
not even discuss this deprivation-of-property cause of action in their brief;
they discuss only the inverse condemnation claim, stating that it is Acontingent upon the
outcome of its declaratory judgment requests and constitutional challenges to
the Sign Ordinance, the latter of which is pending before the Federal Court.@  Therefore, we shall assume that the Signers= alternative inverse
condemnation claim includes their deprivation-of-property claim as well.

 





[7]Compare Stevenson, 437
S.W.2d at 406B08.  The Stevenson court held that the
evidence was sufficient to support the jury=s finding that a billboard was a fixture when
evidence was presented that the billboard 

 

extended to a very
considerable distance into the air and was 90 feet in length.  It was supported by nine vertical wide flange
metal columns, each of which were set in concrete to a depth of approximately
eight feet.  The billboard appears to
have been a most substantial structure very firmly attached to the premises.

 

Id. at 406.





[8]An ownership interest in
a leasehold is the legal right to possess that property for a set period of
time.  Travis Cent. Appraisal Dist. v.
Signature Flight Support Corp., 140 S.W.3d 833, 841 (Tex. App.CAustin 2004, no pet.).

 





[9]Having sustained the City=s second issue, we need
not address its first issue, in which it claims that the Signers have no
standing to sue for inverse condemnation. 
See Tex. R. App. P.
47.1.