**William R. STEVENSON et al., Appellants,**

**v.**

**Glenn W. CLAUSEL, Appellee.**

**No. 186.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Jan. 15, 1969.

Rehearing Denied Feb. 12, 1969.

Marion Sanford, Jr., Walter P. Zivley, Liddell, Dawson, Sapp & Zivley, Walter C. Clemons, Houston, for appellants.

Carl E. F. Dally, Frank Briscoe, Briscoe, Dally & Shaffer, Houston, for appellee.

SAM D. JOHNSON, Justice.

This is a dispute involving the ownership and right to possession of an outdoor advertising display or billboard. The original suit was brought by Glenn W. Clausel against William R. Stevenson and Liberty Sign Company. Cross-actions not deemed pertinent to the issues here were also filed. Glenn W. Clausel, the appellee, will sometimes hereafter be referred to as "Clausel," appellant William R. Stevenson will be referred to as "Stevenson" and appellant Liberty Sign Company will hereafter be referred to as "Liberty."

On October 21, 1964, Stevenson and Liberty entered into an agreement whereby Liberty would construct and lease to Stevenson for a fixed monthly rental, the billboard in question. The location where the billboard was to be placed was not known at this time to either Stevenson or Liberty, but under the terms of their agreement, Stevenson was to locate and provide a site for the display. By the terms of this agreement Liberty was to maintain the billboard, was to be responsible for securing permits and doing other matters concerned with the installation and maintenance of the display. The agreement provided that the billboard was to remain the personal property of Liberty, was not to become a fixture on the property where it was to be located and in the event of Stevenson's default Liberty was to have the right to retake possession of the billboard.

Sometime after this Stevenson-Liberty agreement, Stevenson contacted the appellee, Clausel, who was the owner of certain real property on the Gulf Freeway in Harris County, Texas. Stevenson then, on January 8, 1965, entered into a lease agreement with Clausel covering the real property owned by Clausel. By the terms of this lease, Stevenson was to place signs or billboards on the property in return for the payment of monthly rentals to Clausel. The lease provided that improvements placed on the property could not be removed without the permission of Clausel. The lease specifically provided that on its termination, regardless of the reason therefor, Stevenson was bound to surrender possession of the premises together with all improvements placed thereon, and such improvements were to become the property of Clausel. To secure the monthly rental payments, the lease provided that Clausel was to have a first lien upon all wares, fixtures, chattels and other property of every kind and character placed on the property. The statutory as well as the contractual lien was reserved to Clausel.

It is not disputed that Clausel, at the time of entering into this lease with Stevenson, was wholly unaware of any prior agreement of any nature between Stevenson and Liberty, or between Stevenson and any third party. There is no indication in the record that Clausel expected or had reason to anticipate that there was any other agreement in existence between Stevenson and any third party. There is no indication in the record that Clausel expected or had reason to anticipate that the displays or billboards would be placed on his property by anyone other than Stevenson. There is no indication in the record

that Clausel knew, anticipated or suspected any interest of any third party in the property that was to be attached to his land.

Subsequent to the Clausel-Stevenson lease the billboard in question was attached to Clausel's property. This work was done by Liberty pursuant to its agreement with Stevenson. At the time Liberty placed and attached the billboard to the Clausel land, Liberty knew that the property was not owned by Stevenson. It may be assumed from the record that Liberty also knew that Stevenson had some nature of agreement or lease arrangement with whoever owned the land. The record is not clear whether or not Liberty was actually aware of the provisions of the lease Stevenson had obtained from Clausel. If Liberty was aware of the Clausel-Stevenson lease provisions they were ignored, however. Significantly, the record does not show that Liberty made any inquiry as to who the property owner was, and made no inquiry as to the terms of any agreement or lease between the landowner and Stevenson prior to erecting and attaching the billboard on and to Clausel's property.

The billboard was a large, metal, display type structure. It was faced with a change of letter rail where letters could be attached announcing various coming events similar to a theatre marquee. Above this area in large porcelain letters were the words "Houston Spotlight." The structure extended to a very considerable distance into the air and was 90 feet in length. It was supported by nine vertical wide flange metal columns, each of which were set in concrete to a depth of approximately eight feet. The billboard appears to have been a most substantial structure very firmly attached to the premises.

After this billboard was erected on the Clausel property Stevenson began paying both the rent provided for under his agreement with Liberty and his lease with Clausel. Stevenson continued to make such payments for over a year before defaulting in payment to both Liberty and Clausel. After the default by Stevenson, Clausel brought this suit to enjoin Liberty from removing the sign, to terminate the contract with Stevenson, for damages for the loss of rental payments from Stevenson and insisting upon his right to keep the display. A temporary injunction was granted to Clausel, and upon final hearing Clausel's right to the possession and ownership of the display was upheld.

By the trial court's determination Clausel obtained judgment against Stevenson in the sum of $501.00 for breach of contract. Liberty also obtained judgment against Stevenson in the sum of $10,103.00 in liquidated damages for breach of contract. Liberty was denied any recovery against Clausel, however, and the billboard in issue was awarded to Clausel. The conflict before this Court is between Clausel and Liberty over the determination awarding the billboard to Clausel.

The issue here cannot be resolved by giving effect to both the Liberty-Stevenson agreement and the Clausel-Stevenson lease. They are in conflict. The first, the Liberty-Stevenson agreement, provided the billboard was to remain the personal property of Liberty and could later be removed from its then to be determined site. Under the terms of the second agreement, the Clausel-Stevenson lease, the display to be affixed to Clausel's property, was to become a fixture and was to become the property of Clausel upon the lease's termination for any reason whatsoever.

Liberty contends that as a matter of law Clausel's right to the billboard could come only from his contract with Stevenson and that Stevenson had only a "leasehold interest in the billboard." Liberty also contends that the display did not become a "fixture" and therefore the trial court erred in finding that Clausel was entitled to the possession of the display. Through other related points of error, Liberty contends there is no evidence or insufficient evidence to support the judgment of the trial court.

■ Clausel responds that there are three bases on which the judgment of the trial court may be supported. First, Liberty was an assignee of the Clausel-Stevenson lease and thus became bound by all of its provisions. "An assignee of a lease * * * is bound by the covenants of the original lessee." 36 Tex.Jur.2d 76, Landlord and Tenant, Sec. 233. See also Harvey v. McGrew, 44 Tex. 412; Wooldridge & Son v. Fort Worth & D. C. Ry. Co., 38 Tex.Civ.App. 551, 86 S.W. 942, no writ hist.; Marathon Oil Co. v. Rone, Tex.Civ.App., 83 S.W.2d 1028, err. ref. Here David E. Oliver, a vice president of Liberty, testified that at the time the Liberty-Stevenson agreement was executed, Stevenson "signed a standard assignment of lease of the piece of property" and that all that was lacking was the property description that was to be later supplied when the property location was obtained by Stevenson. Later, after Stevenson's default, Liberty's president, Jack H. Brown, wrote to Clausel: "At the origin of the rental, we secured an assignment of space lease between Mr. Stevenson and yourself in the event Mr. Stevenson defaulted in his payment to you."

The Clausel-Stevenson lease provided that it could not be assigned without Clausel's consent, which was never given. It is apparent, however, that Liberty took particular pains to obtain an initial and prior space lease assignment and Liberty's president believed that this had been accomplished. It is also apparent that Liberty attempted to avail itself of the benefits accruing to it under an assignment.

■ Secondly, Clausel responds that the trial court's judgment is correct because the billboard became a "fixture," a chattel so attached to the realty as to become a part thereof. Without giving consideration to the two agreements, it is apparent that the billboard in issue otherwise possesses all the essential characteristics of a "fixture." Though a question in most instances for the jury, the question of whether or not property has become a "fixture" is generally one of fact. Missouri Pacific Ry. Co. v. Cullers, 81 Tex. 382, 17 S.W. 19, 13 L.R.A. 542; Copp v. Swift, Tex.Civ.App., 26 S.W. 438, no writ hist.; Williamson v. Pye, Tex.Civ.App., 18 S.W.2d 707, no writ hist.; City of Houston v. Priester, Tex.Civ.App., 302 S.W.2d 948, no writ hist. Here the court, as the trier of the facts, has presumptively found favorably to appellee Clausel on this issue.

■ Liberty contends, however, that as a matter of law the billboard could not become a "fixture" because its agreement with Stevenson prohibited such an occurrence. "Of the tests for determining whether or not a chattel has become a fixture, pre-eminence is given to the intention to make the thing a permanent accession to the freehold; the other tests are of value chiefly as evidence of this intention." 25 Tex.Jur.2d 401, Sec. 9, Fixtures, and see numerous cases cited therein. A search for an intention of both Liberty and Clausel is futile in this instance, however; they had only individual intentions which were as much in conflict as were their separate agreements with Stevenson. Liberty and Clausel had no agreement with each other. Generally, intention is a question of fact. Copp v. Swift, supra; Malone v. Burdick, Tex.Civ.App., 58 S.W.2d 1048, no writ hist.; Dallas Joint Stock Land Bank v. Lancaster, Tex.Civ.App., 100 S.W.2d 1029, err. dismd., and appellant is again confronted with the presumptive finding favorable to the appellee Clausel on this issue.

■ Thirdly, Clausel responds that there was an essential difference in the position of Liberty and Clausel and the opportunity each had to protect against the instant situation. The record gives no indication that Clausel had any reason to believe, know or anticipate any interest or concern of any third party. Liberty, on the other hand, knew the property was owned by someone else and knew that some nature of agreement or lease was in effect covering the property. With this knowledge, with every opportunity to determine the actual

and record ownership of the property, and with every opportunity to determine the lease provisions required by the owner, Liberty proceeded to install the billboard and attach it to such premises. Liberty's vice president testified that in taking the action that it took, Liberty relied *solely* on the representations of Stevenson. While such reliance may be persuasive of any issue between those two parties, it is in no way determinative of the interest or position of Clausel.

We cannot justify, as a matter of law, a contrary determination to that made by the trial court. In addition, the instant record gives no factual justification for a contrary determination. The record gives no indication that Clausel had any improper dealings with Stevenson or that he proceeded imprudently. Liberty, on the other hand, relied solely on the representations of Stevenson. Liberty must now be content to continue to look to Stevenson, the party in whom it has placed its reliance. The judgment of the trial court is affirmed.