

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00069-CV

| | | |
|---|---|---|
| Stephen Avdeef | § | From the 141st District Court |
| | § | of Tarrant County (141-249241-10) |
| v. | § | December 21, 2012 |
| RBS Citizens, N.A. | § | Per Curiam |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

It is further ordered that Appellant Stephen Avdeef shall pay all of the costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS

PER CURIAM


NO. 02-12-00069-CV

STEPHEN AVDEEF                                                APPELLANT

V.

RBS CITIZENS, N.A.                                            APPELLEE

----------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Stephen Avdeef appeals the trial court's summary judgment in favor of Appellee RBS Citizens, N.A. He argues that RBS did not have standing to sue and that the trial court erred by granting summary judgment and denying his motion for reconsideration because RBS violated the federal Fair Debt Collection Practices Act (FDCPA). Because we hold that the trial court did not

---

[1]See Tex. R. App. P. 47.4.

err by granting summary judgment for RBS and that the statute Avdeef relies upon did not deprive RBS of standing, we affirm.

On November 8, 2010, RBS as successor in interest to Citizen's Automobile Finance, Inc. filed suit against Avdeef and his son Toby Avdeef to recover $10,578.41 due under a motor vehicle sales contract, the vehicle, and $1,500.00 in attorney's fees.

Toby did not answer. Avdeef filed an answer containing a general denial, asking the court to dismiss RBS's claims, and asserting as affirmative defenses that RBS had not mailed him a demand letter prior to filing suit as required by the FDCPA and that RBS had violated the FDCPA by failing to attempt negotiations or mediation.

RBS filed a combined motion for summary judgment against Avdeef and motion for default judgment against Toby. The motion did not specify whether RBS was seeking traditional or no-evidence summary judgment, but it asserted that the evidence conclusively established that Avdeef and Toby entered into the sales contract and then defaulted on their payments; that the account had been accelerated; and that RBS was entitled to possession of the vehicle, liquidated damages, and attorney's fees. With respect to Toby, RBS asserted that Toby had not appeared and that it was entitled to default judgment against him.

RBS attached to its motion a copy of the motor vehicle sales contract listing Avdeef and Toby as co-buyers and West Loop Dodge, Inc. as the seller. The contract provided that the buyers were in default if they failed to pay any

3

amount when it was due; that if they defaulted, the seller could demand payment in full and could repossess the vehicle; and that if the seller had to hire an attorney to enforce the contract, then the buyers would pay reasonable attorney's fees. The bottom of the first page of the form contract includes a space for the seller to indicate if the contract has been assigned, and in that space West Loop stated that it had assigned its interest to Citizens.

RBS also attached to its motion printouts from a "recovery management system" containing information about Avdeef's account. RBS's custodian of records stated in a business records affidavit that these records showed Avdeef's payment history and were kept in the regular course of business. The records showed regular monthly payments to RBS beginning in August 2006 and continuing, with some late payments, for several years. The records showed that the June 2010 payment was not made and that the last payment on the account had been in July 2010, at which time $10,062.01 was owed on the note. RBS charged off the account in September 2010, and after adding interest and costs, showed an account balance of $10,527.78 still owed.

Avdeef filed a response to RBS's motion but did not dispute RBS's factual assertions concerning the execution of the contract or the alleged default, nor did he file controverting evidence relating to the sales contract or to the fact that the contract was in default. Instead, Avdeef argued that RBS had failed to notify him in writing that the debt had been accelerated, in violation of the federal FDCPA. Finally, under a section titled "[RBS] Had No Standing To Sue Under A Contract,"

4

Avdeef argued that RBS's counsel had falsely claimed that the matter did not fall under the FDCPA. He did not make any argument in that section or any other part of his response about why RBS did not have standing.

Avdeef then filed a motion to dismiss with prejudice, asserting that RBS had no standing to sue because it had not notified him in writing that the debt had been accelerated in violation of federal statute. He also contended that RBS had concealed facts from the trial court by falsely claiming that the matter did not fall under the federal FDCPA.

The trial court granted summary judgment against Avdeef and default judgment against Toby, awarding RBS $10,578.41 plus interest, possession of the vehicle (the proceeds of which were to be applied as credit against the damages awarded), and attorney's fees of $3,000. Avdeef filed a motion for reconsideration, which the trial court denied. Avdeef then filed this appeal.

## STANDARDS OF REVIEW

*Standing*

We review de novo a trial court's determination on the question of standing.[2] In our review, we construe the pleadings liberally in the plaintiff's

---

[2]*Antonov v. Walters*, 168 S.W.3d 901, 904 (Tex. App.—Fort Worth 2005, pet. denied).

favor.[3]  We may consider evidence presented to the trial court when necessary to resolve the jurisdictional issues raised.[4]

*Summary Judgment*

We review a summary judgment de novo.[5]  We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.[6]  We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[7]  A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim.[8]

## ANALYSIS

In his first issue, Avdeef argues that the trial court erred by granting summary judgment for RBS because RBS had no standing to sue.  Avdeef does not cite to any case or Texas statute in his argument under this section.  He does

---

[3]*City of Argyle v. Pierce*, 258 S.W.3d 674, 680 (Tex. App.—Fort Worth 2008, pet. dism'd).

[4]*Id.*; *see also Bland ISD v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

[5]*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

[6]*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[7]*20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

[8]*See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

6

not discuss what gives a plaintiff standing, and although he states that RBS did not notify him in writing that the debt had been accelerated or that it was demanding return of the vehicle, he does not explain how this deprives RBS of standing. The entirety of his argument under this section is as follows:

> The issues presented here are excruciatingly simple and should have never been allowed to progress to the point of having to argue this matter before the Tarrant County Second Court of Appeals. This entire matter should have been promptly dismissed once it was made known to the trial court that [RBS] had NO STANDING TO SUE. The sheer fact that this matter was not dismissed by the trial court once the facts were known in open court as reflected by the court's record of January 19, 2012 and the facts contained in [Appellant's] Motion to Dismiss With Prejudice filed on January 13[,] 2012, and which was filed with the court in a timely manner, it was requested in writing to the court that the Motion to Dismiss and Motion to Compel be heard by the court in conjunction with the January 19, 2012 Motion For Summary Judgment Hearing.
> [RBS] made NO EFFORT to notify [Avdeef] IN WRITING that the debt had been accelerated, or that they were formally demanding return of the collateral other than improperly filing civil litigation in direct violation of Federal statute.
>
> Pursuant to 15 USC 1692g, §809.(d), Validation of debts:
>
> "A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)."
>
> The Federal Statute clearly overrides state law and clearly states that it was WHOLLY IMPROPER for [RBS] to file the original civil action[.] [Record citations omitted.]

Additionally, at the conclusion of the argument section of his second issue, Avdeef cites to *Farmer v. Kinder*,[9] a Missouri case, to argue that courts have a duty to determine if a party has standing.[10] Although Avdeef cites no Texas cases in his brief, Texas law provides that a trial court must determine that a plaintiff has standing.[11]

We construe Avdeef's brief to argue that RBS was deprived of standing to bring this suit by its failure to inform Avdeef that it was accelerating the debt and seeking return of the vehicle. We cannot agree, however, that the statute on which Avdeef relies deprived RBS of standing to pursue its claim to recover money owed under the sales contract.

Avdeef's argument is based on 15 U.S.C. § 1692g, a section of the federal FDCPA.[12] That section provides that a debt collector must provide notice to a consumer in connection with the collection of a debt.[13] This validation notice must contain certain information, and it must be provided to the consumer within

---

[9]89 S.W.3d 447, 451 (Mo. 2002).

[10]Because this cite relates to his first issue, we consider this argument in relation to his first issue rather than his second.

[11]*Bland ISD*, 34 S.W.3d at 554 ("[A] court must not act without determining that it has subject-matter jurisdiction to do so."); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–45 (Tex. 1993) (stating that standing is a component of subject matter jurisdiction).

[12]15 U.S.C.A. § 1692g(a) (West 2009).

[13]*Id.*

8

five days after a debt collector's initial communication with a consumer regarding collection of the debt.[14]   The statute expressly provides, however, that for purposes of that section, a pleading in a civil action does not constitute an "initial communication."[15]   Thus, RBS's filing suit against Avdeef did not by itself trigger any obligation to comply with the validation notice provision.

Furthermore, nothing in the FDCPA suggests that § 1692g is a statutory prerequisite to filing suit to recover a debt or that a debt collector who fails to comply with this statute would not have standing to sue on the debt.  But even if we were to read this section (as Avdeef does) as a statutory prerequisite to filing suit, this section does not apply to RBS.

The loan was assigned to RBS well before it went into default.  Under the FDCPA, RBS is a creditor, not a debt collector.[16]   Accordingly, § 1692g would not require RBS to provide the notice that Avdeef claims that he never received.

---

[14] *Id.*

[15] *Id.* § 1692g(d).

[16] *See id.* § 1692a(4) (defining "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another"); *see also id.* § 1692a(6)(F) (excluding from the definition of debt collector "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.").

9

Avdeef argues in his reply brief that the FDCPA does require that the validation notice be given before legal action can be taken. But the section he relies on does not support his claim. He points out that § 1692g(d) provides, "A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a) of this section."[17] Avdeef misunderstands the language of this section. As stated, the section provides that a validation notice providing information about the debt must be sent to a consumer within five days after "an initial communication" concerning the collection of a debt.[18] But then § 1692g(d) states that filing suit against the consumer does not count as "an initial communication." In other words, filing suit against a consumer, as opposed to engaging in other collection activities, does not trigger the requirement of providing the validation notice.

In his reply brief Avdeef also argues, with no supporting authority cited, that because RBS used outside counsel to collect its own debt, it was a debt collector under federal law. An attorney may, by course of conduct, bring himself within the definition of "debt collector" under the FDCPA.[19] But the issue in this case is not whether RBS's attorney constitutes a debt collector but whether RBS

---

[17] *Id.* § 1692g(d).

[18] *Id.* § 1692g(a).

[19] *See, e.g., Heintz v. Jenkins*, 514 U.S. 291, 292, 115 S. Ct. 1489, 1489 (1995) (holding that the term "debt collector" in the FDCPA applies to a lawyer who regularly tries to collect consumer debts).

is a debt collector and if so, whether that deprives it of standing. It is therefore irrelevant whether RBS's attorney could meet the definition of debt collector. We overrule Avdeef's first issue.

In his second issue, Avdeef argues that the trial court erred by granting summary judgment for RBS and by denying Avdeef's motion for reconsideration because RBS was in violation of the FDCPA. Under this issue, Avdeef again argues that RBS was barred from filing any civil action unless he was first given written notice under the FDCPA. We have already addressed this argument, and we therefore overrule this part of Avdeef's second issue.

Avdeef then contends that RBS's attorney falsely claimed that the matter does not fall under the FDCPA. He takes issue with the fact that RBS reported the debt to credit agencies as a "charge off" and argues, with no citation to evidence in the record, that RBS did this so that it

> could file a Proof of Claim and Adversary Proceeding with the bankruptcy court. This would ensure that [RBS's] claims to the "DEBT" would be preserved on the federal level, and the contractual agreement would not be written off by the court, thus rendering [RBS] a "DEBT COLLECTOR", by their own public admission to ALL THREE PUBLIC CREDIT BUREAUS.

In the summary of his argument, he asserts that RBS did not show that it had the legal authority to sue for a charged off debt once said debt had been publicly reported. He cites no authority for this proposition. Neither the reporting of the debt as charged off nor speculation about RBS's future actions in a possible

11

bankruptcy proceeding made RBS a debt collector under the FDCPA when it filed suit to recover on its own debt.[20]

Avdeef then argues that the knowing failure to communicate to credit bureaus that a debt is disputed is a violation of § 1692e(8) of the FDCPA.[21] That section, on its face, applies to debt collectors. We have already held that RBS is not a debt collector in this case.

Finally, we briefly address Avdeef's argument that the contract between Avdeef and RBS did not state that RBS could demand full payment

> AND the improper surrender of the collateral AFTER full payment is made, as [RBS] is now improperly attempting to do through the courts in direct violation of the written contract, and in direct violation of the rule of law, since it clearly states that notice has to be given before a legal action can be taken.

To the extent that Avdeef challenges the sufficiency of the evidence that RBS produced regarding the terms of the parties' contract, he did not make any such argument in the trial court, but he may raise for the first time on appeal a

---

[20]The term "charged off" generally means that the creditor considers the debt to be worthless and uncollectable, that is, no longer an asset. *See, e.g.*, *Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 603 (E.D. Pa. 2012) (noting that the defendant reported the plaintiff's account as charged off, "meaning [the defendant] considered the debt uncollectable"); Glossary of Credit Terms, Equifax.com, https://help.equifax.com/app/answers/detail/a_id/398/~/glossary-of-credit-terms#CCharged Off (defining "charged off" as an "[a]ccounting term to indicate the creditor does not expect to collect a balance owing and chooses to transfer the account to an accounting category such as 'bad debt' or 'charged to loss'").

[21]15 U.S.C.A. § 1692e(8) (West 2009).

challenge to the legal sufficiency of RBS's summary judgment grounds.[22] But he did not raise this issue in his original brief, and we are not required to consider issues raised for the first time in a reply brief.[23]

Furthermore, as we mentioned above, the sales contract provided that upon default, the seller may demand full payment and may recover the collateral. And RBS was not awarded double recovery—the trial court's order specifically provided that the amount realized from the sale of the vehicle must be deducted from the damages award. Avdeef makes no other argument about the sufficiency of RBS's evidence to prove that Avdeef defaulted on the contract or that he owed the amount that RBS alleged. Accordingly, we do not consider the sufficiency of RBS's summary judgment evidence and grounds.[24] We overrule Avdeef's second issue.

Having overruled both of Avdeef's issues, we affirm the trial court's judgment.

PER CURIAM

---

[22] *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

[23] *City of San Antonio v. Schautteet*, 706 S.W.2d 103, 104 (Tex. 1986) (providing that an issue raised for the first time in a reply brief filed on appeal should not be considered by the court of appeals).

[24] *See Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error.).

13

PANEL:  DAUPHINOT, J.; LIVINGSTON, C.J.; and GARDNER, J.

DELIVERED:  December 21, 2012